1. The instant application is asserted to be a continuation of application serial No.

**1101**

59 CCPA

**Application of Andre VARGA et al.**

**Patent Appeal No. 9009.**

United States Court of Customs and Patent Appeals.

July 27, 1972.

Elliott I. Pollock, Washington, D. C., attorney of record, for appellants.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Fred E. McKelvey, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, and ALMOND, BALDWIN, and LANE, Judges.

RICH, Acting Chief Judge.

This appeal is from the decision of the Patent Office Board of Appeals sustaining the examiner's rejection of claim 19 in appellants' application serial No. 766,-365, filed September 19, 1968, for "Apparatus for High Speed Stripping of Carded Cotton Webs."[1] Five claims stand allowed. We affirm.

520,537, filed December 6, 1965, which is in turn asserted to be a continuation of

## The Claimed Invention

The application discloses apparatus for stripping a carded web of fibers from the doffer of a cotton card.[2] The invention of claim 19 is illustrated in Fig. 4 of the application here reproduced:

FIG. 4

[A6105]

The claim, with subdivisions, reference characters, and emphasis added, is as follows:

19. Apparatus for converting *carded fibers* into a web [w], said apparatus comprising

a card clothed doffer [12],

a card clothed stripper roll [34], and a bare roll [36]

mounted respectively one after the other in the direction of movement of the web,

each said roll having a length at least equal to the width of said web and the axes of rotation thereof being substantially parallel,

means [not shown] for rotating said doffer and said stripper roll at *substantially the same surface speeds,*

said stripper roll being mounted with its teeth close to, but without penetrating, the teeth of said doffer so that the teeth of said stripper roll engage the fibers on the doffer for transferring the fibers from the doffer to said stripper roll,

means for detaching said fibers from said stripper roll in the form of a web [w], said means comprising a pair of crush rolls [36, 38], one of which constitutes said bare roll, positioned to grip said web there between,

serial No. 206,812, filed July 2, 1962. The latter is stated by appellant to be entitled under 35 U.S.C. § 119 to the benefit of the filing date of British application 26271/61, filed July 20, 1961, a claim

which the Patent Office Solicitor's brief says has not yet been substantiated.

2. The carding process prepares the raw fiber material for drawing and spinning.

said bare roll being mounted with its surface spaced from said stripper roll close to the teeth of said stripper roll close to the teeth of said stripper roll and engageable with fibers on the latter, and

means [not shown] for rotating said bare roll in the same angular direction as said stripper roll and at a *surface speed of from about 3% to about 40% greater* than that of said stripper roll, whereby said *crush rolls* exert *a drafting action pulling on said web with a force sufficient to detach it* from said stripper roll.

## The Rejection

Claim 19 stands rejected under 35 U.S.C. § 103 as unpatentable over the following references: [3]

| Thornton et al. (Thornton) (Great Britain) | 3,168 | Nov. 1, 1869 |
| Whitcomb et al. (Whitcomb) | 206,510 | July 30, 1878 |
| Varga | 3,003,195 | Oct. 10, 1961 (filed Oct. 31, 1958) |
| Kalwaites | 3,098,265 | July 23, 1963 (filed Feb. 19, 1960) |

Varga relates to apparatus for treating cotton fiber. We reproduce Fig. 1 therefrom:

[A6106]

The apparatus includes (1) a doffer 10 on the right, (2) a fly comb 14 for stripping a carded web 28 from the doffer, (3) a pair of smoothly ground "ironing, or

---

3. Also cited were Clark patent No. 2,910,736, granted November 3, 1959, and Varga (2) patent No. 3,145,425, granted August 25, 1964, on an application filed October 31, 1961. The former was not mentioned in connection with claim 19 by either the examiner or the board, and the latter was referred to only by the examiner and solely to refute an argument of appellant's concerning the state of the art.

impurity crushing, rollers" 24 and 26 which "maintain the web in tension" and are rotated "at a [surface] speed sufficient to take up slack between the doffer and the ironing rollers," and (4) a pair of drawing-off, or calendar, rollers 16 and 18 rotated at a surface speed "greater than that of the ironing rollers to produce the drafting effect."

Thornton discloses carding apparatus shown in the drawing, with parts broken away, as follows:

[A6107]

A card stripper C is rotated at a suitable surface speed to strip carded fiber from the teeth of doffer A, and a plain roller D is rotated at greater surface speed than roller C to remove the fiber from it. Roller C is described as a substitute for and improvement over oscillatory combs. The specification states that such combs were formerly used but were subject to filling with dirt and grease, rendering them inoperative until cleaned.

Kalwaites discloses carding apparatus with doffer and stripper rolls positioned to have a clearance between their peripheral surfaces "on the order of from about 0.005 inch to about 0.150 inch * * *." The stripper roll rotates at a greater peripheral surface velocity than the doffer, with the ratio of velocities "greater than 1:1 and preferably at least 1.2:1 or 2:1." Example 1 is described as having a ratio of 1.25:1. In a modified embodiment, the web is deposited from the stripper roll onto a "smooth-faced transition roll" which, if driven at a greater velocity than the stripper roll, is said to provide a limited "drafting" of the fibrous web as it is removed from the stripper roll.

Whitcomb discloses carding apparatus including a doffer and stripping roll set "only about one sixty-fourth of an inch apart * * *." The surface speed of

the stripping roll is "slightly less" than that of the doffer.

The examiner held that it would have been obvious from Thornton to substitute a stripper roll for a vibrating stripper comb in Varga.[4] He also regarded Whitcomb and Kalwaites as demonstrating the obviousness of positioning such a stripper roll with its teeth close to, but spaced from, the Varga doffer. The recitations of the relative surface speeds of the doffer and stripper roll on the one hand and of the relative surface speeds of the stripper roll and the bare roll (the upper of the pair of crush rolls) on the other were not considered by the examiner to define anything unobvious over the reference teachings. The board agreed generally with the examiner's reasoning, although it derived additional support from Kalwaites relative to appellants' recitation of the relative surface speeds of the doffer and the stripper rolls.

## OPINION

Appellants contend that they have provided apparatus in which stripping a carded web of fibers from the doffer of a cotton card can be effected at a rate three times higher than could be accomplished previously. They rely heavily on the asserted increase in speed as demonstrating that the changes the examiner and board found to have been obvious in view of the prior art were not really obvious. They liken the situation here to that in the classic Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U.S. 45, 43 S.Ct. 322, 67 L.Ed. 523 (1923), wherein evidence proving a substantial increase in maximum output of paper-making machines, accompanied by almost universal adoption in the industry, was found to be persuasive that the change over the prior art which accounted for the improvement must have been unobvious and hence was patentable.

While the principle of law is sound, the weakness of appellants' argument on this point lies in the fact that the record here fails to establish circumstances under which the doctrine of *Eibel* would apply. Instead of convincing proof of unexpected improvement due to features set out in the claim on appeal, the present case includes only a general assertion in the application that appellants' "invention" can be operated satisfactorily to remove a web from *cotton* card at a rate three times that which could be attained previously. Even accepting appellants' assertion that their specification discloses apparatus capable of achieving this improved result, we find that appellants have not demonstrated that *the structure recited in claim 19* is what brings about this advantage. In the first place, claim 19 is not limited to apparatus for treatment of cotton. More importantly, the claim is directed to only the third of three forms of appellants' invention disclosed in their application. In contrast to the form to which the present claim is directed, the first two forms both embody at least one card-clothed redirecting roll which strips the carded fleece from the stripper roller. While claim 19 does not recite that roll, the allowed claims do specify such a roll. It cannot be presumed, in the absence of even an assertion in appellants' specification, that the improved result claimed for appellants' "invention" is attainable by a combination lacking a redirecting roll such as is recited in the allowed claims. Compare In re McLaughlin, 443 F.2d 1392, 1396–1397, 58 CCPA 1310, 1315–1316 (1971). In any event, there is no evi-

4. Appellant argues that there is confusion over which references are involved in the rejection. However, we think it clear that the examiner relied on Varga, Thornton, Kalwaites, and Whitcomb, with Varga the basic reference. He relied on Kalwaites and Whitcomb as alternatives with regard to the spacing of the doffer and stripper rolls. The board relied only on those same references, and it is apparent from appellants' arguments that they fully understood the grounds of rejection.

dence of improved speed in the record. We find only assertions.

The indications that the principal change in the Varga structure contemplated by the rejection (i. e., use of a stripper roll in place of a fly comb) would have been obvious at the relevant time to a person of ordinary skill in the relevant art are almost overwhelming. Thornton expressly teaches using a stripper roll *as a substitute* for oscillatory comb plates for demoving fiber from the doffer. Varga, referring to removal of the web fibers from the doffer, states that it is "usually by means of a fly comb," thus suggesting that there were known alternatives. What alternative could have been more obvious than the use of a stripper roll, taught in Kalwaites and Whitcomb as well as in Thornton? Indeed, Kalwaites refers to "the reciprocating comb" as a conventional means for removing fibers from the doffing cylinder but expresses a preference for use of a stripper roll. That Varga is concerned with stripping cotton, while Thornton specifies only wool (though mentioning "Wool or other Fibrous Substances" in his title) is of no aid to appellants' position. The record indicates that carding cotton and wool involve similar problems and solutions. Kalwaites, for instance, enumerates both "cotton" and "wool" among the many fibers which his apparatus is capable of stripping. Claim 19 is directed broadly to "carded fibers."

As to the positioning of the doffer and stripper rolls, there can be no serious challenge to the position of the examiner and board that the disclosure of similar spacing in each of Kalwaites and Whitcomb provides a clear suggestion that if a stripper roll is to be used it may be mounted with its teeth close to, but without penetrating, the teeth of the doffer.

The remaining issue pertains to the requirements that the doffer and stripper roll be rotated at substantially the same surface speed and that the bare roll, constituting one of the pair of crush rolls which pull the web from the stripper roll, be driven at a higher speed than the stripper roll.

The examiner noted Kalawaites' disclosure of a surface speed of the stripper 1.2 times that of the doffer and Whitcomb's disclosure of a surface speed of the stripper slightly slower than the doffer and compared them to the claim language "substantially the same." He further stated his belief that one skilled in the art would be able to predict the effects on the "sliver," or output of the apparatus with which we are presently involved, of stripper surface speeds greater than, the same as, or less than the surface speed of the doffer.

As to the speed of the bare roll, or upper crush roll, the examiner considered it obvious that a surface speed too much greater than the stripper speed would cause the web to break, while a speed too much less would cause the web to wrap around the surface of the roll or break. He accordingly concluded that, on the basis of the evidence before him, the selection of the recited relative speeds of the doffer, stripper roll, and upper crush roll would have been obvious.

We do not agree that either Kalwaites' disclosed stripper roll surface speed 1.2 times that of the doffer or Whitcomb's "slightly slower" stripper roll surface speed *meets* the claim recitation of "substantially the same surface speeds" or even corresponds fully to the disclosure in appellants' specification of a stripper roll surface speed "more or less the same" as that of the doffer. Nevertheless, the present record clearly suggests that one skilled in the art would find it obvious to vary the speed ratio with variations in conditions and select a relationship between the alternatives specified in Kalwaites and Whitcomb, thus making obvious the "substantially the same" requirement of claim 19.

Also, we agree with the board that appellants' "crush rolls"[5] appear to serve the same purpose as the rollers 24, 26 described in Varga as "ironing, or impurity crushing, rollers." Disclosure that these Varga rollers are driven at a speed such as will "maintain the web in tension" we think would suggest use of a surface speed at least as much as the claimed minimum of 3% greater than the last preceding roll, the stripper roll, in the modified Varga structure. On this issue, appellants argue that there is nothing in the references to suggest replacement of the smooth surface transition roll which withdraws fibers from the stripper roll in the Kalwaites Fig. 2 embodiment by a pair of superposed crush rolls. However, Kalwaites states that this transition roll may be driven "with any desirable linear velocity ratio with respect to the stripper roll" and that, if it is rotated with a surface linear velocity greater than the stripper roll, "there is accomplished a corresponding *drafting* of the fibrous web as it is removed from the stripper roll." (Emphasis ours.) On the present record, we see nothing unobvious in driving Varga's ironing or crushing rolls, which are said to maintain the web in tension, at a speed enough greater than the substituted stripper roll to provide drafting.

The prior art relied upon below therefore makes out a strong prima facie case that the structure recited in claim 19 would have been obvious to a person of ordinary skill in the art. Since, as already explained, we have found no evidence in the record to rebut this prima facie case, the decision of the board is affirmed.

Affirmed.

59 CCPA

---

5. Appellants, referring to those roles in oral argument, stated that Varga was "concerned with crushing impurities, not with increasing speed." However, the designation "crush rolls" would seem to indicate that appellants contemplated that their rolls would serve the same purpose as the rolls specified in Varga. Also, it is disclosed that appellants' "crush rolls," like Varga's rollers, are followed upstream of the web by calendar rolls driven at a still higher surface speed.